RECEIVED
MAY 1 8 2011
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| M. KATHLEEN MCKINNEY, Regional Director Director of the Fifteenth Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD<br><br>VERSUS<br><br>CAREY SALT COMPANY, a Subsidiary of COMPASS MINERALS INT'L, INC. | CIVIL ACTION NO. 11-0287<br><br>JUDGE DOHERTY<br><br>MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Before the Court is the "Amended Petition for Temporary Injunction Pursuant to Section 10(j) of the National Labor Relations Act" filed by M. Kathleen McKinney, Regional Director of the Fifteenth Region of the National Labor Relations Board ("NLRB"), who filed the instant petition for and on behalf of the NLRB pursuant to Section 10(j) of the National Labor Relations Act, as amended, 29 U.S.C. §160(j). In the amended petition, the NLRB seeks injunctive relief pending the final disposition "of the matters involved herein and pending before the Board on unfair labor practice charges Case Nos. 15-CA-19704 and 15-CA-19738," alleging that defendant Carey Salt Company ("Carey Salt" or "the Company") has engaged in, and continues to engage in, conduction in violation of Sections 8(a)(1), (3), and (5) of the Act. Carey Salt has filed an Answer to the Amended Petition [Doc. 15] and both parties have briefed the question of whether the NLRB is entitled to injunctive relief under the facts and circumstances of this case. The NLRB has filed a Motion for Leave to Reply to Carey Salt's Answer [Doc. 28], which is GRANTED. Additionally, the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service

Workers International Union, and its Local 14424 (collective, the "Union"), a non-party to the litigation, has filed a Motion for Leave to File Brief as an Amicus Curia, which is herein GRANTED [Doc. 5]. Both parties, and the Union, agree the instant matter can be decided on the basis of briefs and affidavits.

After review of the arguments of the parties, as well as all briefs and affidavits, the NLRB's Amended Petition for Injunctive Relief is DENIED.

I. **Factual and Procedural History**

The following facts appear to be undisputed:

- The term of the most recent collective bargaining agreement ("CBA") between the parties covered the period from March 25, 2007 through March 24, 2010. In late March 2010, the now-expired CBA was extended to March 31, 2010 by mutual agreement of the parties.

- In February 2010, the parties began bargaining for a successor CBA.

- The parties met for bargaining nine times in February 2010 and six times in March 2010.

- In February and March 2010, the parties signed off on a number of tentative agreements, but open issues remained. On March 18, 2010, the Union requested the Company's final offer. The Company agreed to provide a final offer on March 19, 2010.

- The Company presented a final offer on March 19, 2010, which was rejected by the Union. Later that day, the parties agreed to extend the 2007-2010 CNBA until they could resume bargaining on March 31, 2010.[1]

Much of what follows is disputed by the parties. The petitioner argues the Company made a "brief, *pro forma* appearance" at the bargaining table on the morning of March 31, but that after the Union apprised the Company of issues of concern to the bargaining Unit employees, and

---

[1] It is difficult for this Court to gauge exactly which facts are disputed and which are not, because Carey Salt has elected not to delineate the facts and circumstances surrounding the actual bargaining sessions that led to this dispute, arguing those facts are not relevant to this Court's determination as to equitable necessity. This Court tends to agree, but provides the factual basis included herein to provide contextual basis for the Court's ruling.

-2-

expressed its willingness to address these concerns, the Company stated its final offer was final, and the Company was not prepared to move. The petitioner argues the bargaining Unit employees attempted to continue to bargain, but the Company declared the parties were at an impasse and refused to bargain further. The Company's principal spokesperson left the bargaining table and prepared to fly home. E-mail correspondence went back and forth between the Union's representative and the Company's spokesperson all day and into the next day, April 1, with no agreement reached. On April 7, 2010, bargaining Unit employees went on strike.

The parties returned to the bargaining table on April, 30, 2010 for a bargaining session with a federal mediator present. The Company presented the Union with a modified final proposal, which the bargaining Unit employees later voted to reject on May 6. The parties conducted additional bargaining sessions on approximately seven dates in May and June 2010. The petitioner contends at an early June bargaining session, the Company's spokesperson unlawfully threatened employees on the Union's bargaining committee by telling them it was hiring permanent replacements for the striking workers.

The strike ended on June 15, 2010. Petitioner argues the Union made an unconditional offer, by e-mail, for the strikers to return to work on the same date, but on June 16, 2010, the Company immediately refused to recognize the right of the strikers to return to their positions, and instead determined the great majority of the strikers had been permanently replaced. The petitioner contends the Company returned only 27 strikers to work during the period June 20 to 22, and that it placed about 47 strikers on a "preferential hire list." As of the filing of the petitioner's complaint, the petitioner argues more than 30 strikers have not been returned to their positions with the Company. Additionally, the petitioner argues some of the strikers that have returned to work not in their pre-

strike positions.

On June 23, 2010, the Company stated it had submitted another final offer and bargaining was over. In a June 26 e-mail, the Company told the Union it was implementing its final offer on June 27, and it did so on that date. Finally, petitioner argues on October 19, 2010, the Company also implemented a recall policy that had not been negotiated between the parties during bargaining.

## II. Law and Analysis

### A. Injunctive Relief Under Section 10(j)

The petitioner's request for injunctive relief is grounded in Section 10(j) of the Taft-Hartley Act, which states as follows:

(j) Injunctions

The Board shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged or is engaging in an unfair labor practice, to petition any United States district court . . . for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

29 U.S.C. §160(j).

In *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1188-89 (5th Cir. 1975), the Fifth Circuit explained the history of the provision:

This provision was enacted in 1947, despite Congress' general aversion to labor injunctions. In the fifteen years following passage of the Norris-LaGuardia Act, it had become evident that normal NLRB machinery involving issuance of an unfair labor practice complaint, a hearing before a trial examiner, de novo review by the Board, and an enforcing order by a Court of Appeals was so time-consuming that guilty parties could violate the Act with impugnity during the years of pending litigation, thereby often rendering a final order ineffectual or futile. Congress therefore gave the labor board a discretionary tool to prevent erosion of the status of the parties pending its final decision.

District courts considering whether injunctive relief under Section 10(j) is appropriate conduct a sequential two-party inquiry: (1) whether the Board, through its Regional Director, has reasonable cause to believe that unfair labor practices have occurred, and (2) whether injunctive relief is equitably necessary, or, in the words of the statute, "just and proper." *Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 850 (5th Cir. 2010); *Boire*, 515 F.2d at 1188-89, *citing NLRB v. Aerovox Corp. of Myrtle Beach*, 389 F.2d 475 (4th Cir. 1967); *Minnesota Mining and Manufacturing Co. v. Meter*, 385 F.2d 265 (8th Cir. 1967); *Angle v. Sacks*, 382 F.2d 655 (10th Cir. 1967). The first question requires the Board to sustain a minimal burden of proof, but the second demands some exercise of discretion on the part of the trial judge. On the first question, a district court need only decide that the NLRB's theories of law and fact are neither insubstantial nor frivolous to rule that the Board had reasonable cause. *Overstreet*, 625 F.3d at 850, *citing Boire*, 515 F.2d at 1188-89.

The Fifth Circuit reviews the district court's factual determinations for clear error and its legal conclusions *de novo*. *Overstreet*, 625 F.3d at 850, *citing Guy Carpenter & Co v. Provenzale*, 334 F.3d 459, 463 (5th Cir. 2003), and reviews whether injunctive relief is just and proper under an "abuse of discretion standard." *Overstreet*, 625 F.3d at 850, *citing Boire*, 515 F.2d at 1192.

In the instant case, the Company concedes the petitioner has met the minimal burden to satisfy the "reasonable cause" prong of the test, and this Court agrees. Therefore, the sole issue to be decided by this Court is whether the petitioner satisfies the second prong of the test, that is, whether injunctive relief is equitably necessary.

## B. Evidentiary Hearing Not Required

As an initial matter, this Court must determine whether the question to be decided – whether the petitioner satisfies the second prong of the Section 10(j) analysis (that of "equitable necessity") is a question that can be answered by way of briefs and affidavits, without a full evidentiary hearing and/or the taking of additional testimony. All parties, as well as the Union, agree the matter can be decided on briefs and affidavits.

Although this Court was unable to find a definitive case within the Fifth Circuit addressing this issue, other circuits have addressed the question and determined 10(j) injunctions may issue on the basis of documentary evidence alone. *See, e.g., Silverman v. Red & Tan Charters, Inc.,* 1993 WL 498062, 1 (S.D.N.Y.1993), citing *See, e.g., Aguayo v. Tomco Carburetor Co.,* 853 F.2d 744, 750-51 (9th Cir.1988); *Gottfried v. Frankel,* 818 F.2d 485, 493 (6th Cir.1987); *Fuchs v. Hood Industries, Inc.,* 590 F.2d 395, 397 (1st Cir.1979); *D'Amico v. Cox Creek Refining Co.,* 126 F.R.D. 501, 504 (D. Md.1989). As the Sixth Circuit explained:

> A section 10(j) hearing is only a "reasonable cause" hearing-the Board does not have to prove, and the district court is not required to find, that unfair labor practices have occurred. In making a reasonable cause determination, the district court and this court on appeal are not supposed to resolve conflicts in the evidence. The evidence available to the district court was clearly adequate to determine whether the Board had reasonable cause to believe unfair labor practices had occurred. Since the district court is not permitted to resolve conflicts in the evidence, a "complete" story is not necessarily required to make this determination. Accordingly, we conclude that the district court did not abuse its discretion in denying Somerset's request for an evidentiary hearing.

*Gottfried,* 818 F.2d at 493, citing *Kobell v. Suburban Lines, Inc.,* 731 F.2d 1076, 1083 (3rd Cir.1984); *Levine v. C & W Mining Co.,* 610 F.2d 432, 435 (6th Cir.1979); *Squillacote v. Graphic Arts Int'l Union,* 540 F.2d 853, 860 (7th Cir.1976).

In the instant case, because the Company concedes the first prong of the Section 10(j) test, this Court need not engage in a fact-finding inquiry to make a "reasonable cause" finding. Rather, all this Court must determine is whether immediate temporary injunctive relief is "just and proper." This Court concludes it has sufficient evidence before it to make that determination, and, therefore, no evidentiary hearing is required.

C.     **Legal Standard**

Section 10(j) itself allows "such temporary relief or restraining order as it (the district court) deems just and proper," 29 U.S.C. s 160(j), a requirement the federal courts have given the shorthand label "equitable necessity." In *Boire*, the Fifth Circuit explained "this second prong of the [Section 10(j) test thus confers a certain range of discretion upon the trial court, reviewable for abuse." 515 F.23d at 1192; *Danielson v. Local 275*, 479 F.2d 1033 (2nd Cir. 1973); *Minnesota Mining and Manufacturing Co. v. Meter, supra.*

In determining whether the petitioner satisfies the second prong of the two-part test in the instant case, this Court is guided by two Fifth Circuit cases, both of which have been cited herein. In *Boire*, the Fifth Circuit declined to grant injunctive relief to the NLRB, while in *Overstreet*, the Fifth Circuit concluded the necessary showing was made and injunctive relief was warranted. A closer look at the facts of each case is warranted.

In *Boire*, the NLRB sough temporary injunctive relief against the Company and its contractor for claimed coercive tactics designed to impede employees' organizational efforts. Thus, in *Boire*, no Union certification had ever been held, and the parties had never enjoyed a bargaining relationship. Among the allegedly unfair labor practices was the Company's immediate firing of employees who signed union cards; the company's threatening employees that if they became union

members, they would be considered "independent businessmen," and not employees; refusal to bargain; and other activities allegedly designed to undermine union strength. *Boire*, 515 F.2d at 1190.

The NLRB filed a petition for Section 10(j) relief. After a hearing, the district court concluded the Board had reasonable cause to believe the company had violated Sections 8(a)(1), (3) and (5) of the NLRA by engaging in various activities to thwart union membership. With respect to the second prong – "equitable necessity" – the district court enjoined the company from violating the Act in the future through such activities as financial inducements not to join the union, threats of economic reprisals, discriminatory discharges, and other methods of interfering with employees' organization rights. However, noting Section 10(j) is an extraordinary remedy, the district court refused to grant the NLRB's request for all other injunctive relief, as explained by the Fifth Circuit:

> The court refused, however, to order mandatory injunctive relief in the form of temporary reinstatement or a temporary bargaining order. *It focused on the distinction between prohibitory and mandatory injunctive remedies, reasoning that a majority of courts have denied mandatory relief because it usurps the Board's powers and prerogatives.*

The Court went on:

> *Section 10(j) is itself an extraordinary remedy to be used by the Board only when, in its discretion, an employer or union has committed such egregious unfair labor practices that any final order of the Board will be meaningless or so devoid of force that the remedial purposes of the Act will be frustrated. Proper composition of the bargaining unit, reinstatement of unlawfully discharged employees, and certification of the union as bargaining representative are matters generally left to the administrative expertise of the Board. We believe that measures to short-circuit the NLRB's processes should be sparingly employed. While it is true Congress implemented s 10(j) to aid the Board in administration of national labor policy, its scope should not overpower the Board's orderly procedures.* Moreover, though traditional rules of equity may not control the proper scope of s 10(j) relief, some measure of equitable principles come into play. If the trial court, in its discretion, does not believe that far-reaching mandatory relief would serve the purposes of the Act, it need not grant the full remedy requested by the Board. The

> Chancellor does not abdicate his powers merely upon a showing that the Regional Director's theories surpass frivolity. He maintains some power to do equity and mold each decree to the necessities of the case.

*Boire*, 515 F.2d at 1192-93 (internal citations omitted) (emphasis added).

Noting the district court "prohibited [the company] and [its contractor] from committing any unfair labor practices in futuro," pending final determination of the charges before the Board, the Fifth Circuit explained such a remedy was not merely superfluous, concluding the order "adequately protect[ed] the interests of the union, since the employers can be held in contempt if they try to dissipate union strength in any unlawful manner." *Id.* at 1193.

With respect to the requested remedy of reinstatement of workers, the Fifth Circuit stated:

> Nor did the district court abuse its discretion in failing to order reinstatement of the two employees arguably discharged for union activity. *The Board waited three months before petitioning the district court for temporary relief. Although the time span between commission of the alleged unfair labor practices and filing for [Section] 10(j) sanctions is not determinative of whether relief should be granted, it is some evidence that the detrimental effects of the discharges have already taken their toll on the organizational drive. It is questionable whether an order of reinstatement would be any more effective than a final Board order at this point. Whether these employees were in fact dismissed for their organizational efforts will be determined by the Board when it brings the full panoply of its resources to bear upon issuance of the final order; the issues are now well preserved for its review.*

*Id.* at 1193 (emphasis added).

Finally, the Fifth Circuit affirmed the district court's decision not to order interim bargaining, noting the parties had never enjoyed a bargaining relationship, and that "[m]aintenance of the status quo is at least one consideration that should enter the 10(j) equation," as follows:

> Were we to order bargaining on the record before this court, our decision would rest on the assumption that Pilot and BBR had actually committed unfair labor practices an assumption we are unwilling to make, given that the union has not yet been forced to prove its case by a preponderance of the evidence. We only hold that the district court was amply supported in its conclusion that there was reasonable cause to

> believe that such practices had been committed. ***These are matters peculiarly within the investigatory-adjudicatory province of the Board.***

*Id.* at 1194 (emphasis added).

A different result was reached in the *Overstreet* case. In *Overstreet*, although the Union was certified, the parties were bargaining for an initial contract. After approximately thirteen months of unsuccessful bargaining, Unions members went on strike, after which the NLRB filed a Section 10(j) petition in the district court for temporary injunctive relief seeking to force the company to (1) cease and desist from alleged unfair labor practices, (2) recognize and bargain in good faith with the certified union, (3) rescind unlawful unilateral changes in working conditions, and (4) offer to reinstate the former strikers. *Overstreet*, 625 F.3d at 847. The district court granted the injunction on all points, and the company appealed, contesting (1) the court's determination that it engaged in bad-faith bargaining in relation to a bargaining matter, and (2) the court's order to reinstate the striking workers to the same or equivalent employment. *Id.*

Much of what was argued on appeal addressed the first prong of the test for injunctive relief, "reasonable cause," which is not at issue in the instant case. With respect to the second prong of "equitable necessity," the Fifth Circuit held the district court did not abuse its discretion in ordering reinstatement of the striking workers, noting:

> ***Ordinarily, courts properly leave the decision whether to reinstate strikers to the Board.*** The Board's remedial process may be effective even if the district court does not grant an injunction ordering reinstatement. ***In exceptional cases***, however, the district court may employ an injunction ordering reinstatement, so as to prevent the destruction of employee interest in collective bargaining, irreparable injury to the union's bargaining power, and the undermining of the effectiveness of any resolution through the Board's process.

*Overstreet*, 625 F.3d at 855-56 (internal citations and footnotes omitted) (emphasis added).

However, as in *Boire*, the Fifth Circuit addressed the issue of delay in seeking a federal court injunction:

> One potential problem here is the time that has elapsed between the strike and any potential reinstatement. In *Pilot Freight Carriers,* we refused to hold that the district court had abused its discretion when it refused to order reinstatement. The district court in that case justified its reluctance to grant such an injunction on the fact that the Board's delay of three months in seeking injunctive relief after discharge demonstrated that harm had already been incurred and reinstatement thus would serve no purpose. Other circuits, however, have affirmed grants of reinstatement to preserve the status quo ante pending the Board's decision. Even though in *Muffley,* eighteen months elapsed between the employee's discharge and the filing of the petition, the district court was not held to have abused its discretion when it concluded the delay was reasonable, especially given the Board's need to wait for the ALJ to make a decision in that complex case. Because the ALJ's fact finding here aided the district court's adjudication of Overstreet's petition, delay alone is not dispositive.

*Id.*

Finally, the Fifth Circuit noted another factor supporting its conclusion that the district court did not abuse its discretion in granting injunctive relief and ordering reinstatement of the strikers, *i.e.*, the district court's finding that the company's discharge of the strikers and failure to reinstate them was a direct cause of the anti-Union sentiment that led to several petitions to decertify the Union. *Id.* at 856.

In the instant case, Carey Salt argues the *Overstreet* case is distinguishable from the instant case, and that, unlike *Overstreet*, the instant case is not a case in which the "rare" and "extraordinary" remedy of temporary injunctive relief pending the Board's determination on the merits is appropriate. This Court agrees, concluding several factors militate against a finding of "equitable necessity."

First, according to the NLRB's own brief, "the [p]arties have a lengthy bargaining

relationship."[2] Although the Union argues the bargaining relationship has not been a successful one, the facts belie such assertion. Prior to the instant disputes, the parties had in place a CBA covering the term March 25, 2007 through March 24, 2010, evidencing a history of successful negotiating between them. Additionally, the agreement to extend the terms of the current CBA to March 31, 2010 was mutually reached by both parties in mid-March, 2010. Consequently, the bargaining history of this case is unlike *Boire* – in which the parties had no Union certification – and *Overstreet* – in which the parties had Union certification, but no bargaining history, as the parties were bargaining an initial contract.

Additionally, this Court notes the majority of unilateral changes made to the working conditions of the employees actually and indisputably benefit the workers. The conditions changed pursuant to the disputed March 31, 2010 implementation are detailed in Paragraph 7(s)(1) - (20) of the petitioner's amended complaint. However, the Company argues – and petitioner does not dispute – of the twenty items listed, seventeen of the items were either additional benefits for employees or items on which there had been an agreement reached between the parties during negotiations.[3] While this Court need not determine at this juncture whether the petitioner is entitled to choose the items for rescission were this Court to order injunctive relief,[4] what is relevant for purposes of the Court's present inquiry is that the majority of the changes made benefit the employees, which hardly supports

---

[2] *See* Memorandum of Points and Authorities in Supporet of Petitioner for Interim relief Pursuant to Section 19(j) of the National labor Relations Act, as Amended, attached as exhibit to petitioner's amended complaint, Doc. 1.

[3] The Company argues the three items that the petitioner would argue should be rescinded are (1) changes to the overtime distribution procedure applicable to Unit employees; changes to cross assignment restrictions applicable to Unit employees; and changes to the shift schedules applicable to Unit employees. *See* Amended Complaint, ¶¶7(s)(1)-(3).

[4] The Court has referred to this potential legal issue as "cherry-picking."

the petitioner's argument of "equitable necessity" for temporary injunctive relief pending the Board's final decision on these matters. Indeed, should the petitioner prevail at the administrative level, and be entitled to rescission of certain of the changes made by the Comapny, the Company potentially stands to be ordered to pay a substantial amount of backpay to workers to remedy its unfair labor practices. However, if this Court were to rescind a new benefit – as the petitioner asks – and the Company ultimately prevails at the administrative level, there is question regarding how the workers would recover the benefits that were taken away by this Court pending the Board's decision. As the Company rightly points out, at that point, the Company would have committed no violation and would be under no obligation to restore anything to the workers, a situation this Court finds reduces the need for temporary injunctive relief pending the Board's decision.

Nor is this Court inclined to order the reinstatement of strikers under the facts at hand. In *Boire*, the district court refused to grant injunctive relief where the NLRB waited three months after the discharge of two employees arguably discharged for union activity to petition the district court for injunctive relief. In so ruling, the Fifth Circuit noted that "the time span between commission of the alleged unfair labor practices and filing for [Section] 10(j) sanctions is not determinative of whether relief should be granted, it is some evidence that the detrimental effects of the discharges have already taken their toll on the organizational drive," and, therefore, it was "questionable whether an order of reinstatement would be any more effective than a final Board order at this point." 515 F.2d at 1193.

Indeed, even in *Overstreet*, where the district court ordered reinstatement and was affirmed on appeal, the Fifth Circuit noted as a "potential problem" the lapse of time between the strike and any potential reinstatement. In *Overstreet*, the NLRB waited twenty months to file a petition for

the petitioner's argument of "equitable necessity" for temporary injunctive relief pending the Board's final decision on these matters. Indeed, should the petitioner prevail at the administrative level, and be entitled to rescission of certain of the changes made by the Comapny, the Company potentially stands to be ordered to pay a substantial amount of backpay to workers to remedy its unfair labor practices. However, if this Court were to rescind a new benefit – as the petitioner asks – and the Company ultimately prevails at the administrative level, there is question regarding how the workers would recover the benefits that were taken away by this Court pending the Board's decision. As the Company rightly points out, at that point, the Company would have committed no violation and would be under no obligation to restore anything to the workers, a situation this Court finds reduces the need for temporary injunctive relief pending the Board's decision.

Nor is this Court inclined to order the reinstatement of strikers under the facts at hand. In *Boire*, the district court refused to grant injunctive relief where the NLRB waited three months after the discharge of two employees arguably discharged for union activity to petition the district court for injunctive relief. In so ruling, the Fifth Circuit noted that "the time span between commission of the alleged unfair labor practices and filing for [Section] 10(j) sanctions is not determinative of whether relief should be granted, it is some evidence that the detrimental effects of the discharges have already taken their toll on the organizational drive," and, therefore, it was "questionable whether an order of reinstatement would be any more effective than a final Board order at this point." 515 F.2d at 1193.

Indeed, even in *Overstreet*, where the district court ordered reinstatement and was affirmed on appeal, the Fifth Circuit noted as a "potential problem" the lapse of time between the strike and any potential reinstatement. In *Overstreet*, the NLRB waited twenty months to file a petition for

temporary injunctive relief in federal court after the strike and the hiring of permanent replacement employees on the part of the company. However, in *Overstreet*, the Fifth Circuit explained "the ALJ's fact finding . . . aided the district court's adjudication of Overstreet's petition," and therefore concluded the delay alone was not dispositive. *Id.* at 856.

In the instant case, the strike began on April 7, 2010 and lasted until June 15, 2010. The NLRB argues the Company did not return striking workers in mid-June, when the Unions made an unconditional offer to return to work. However, the NLRB did not file a petition in district court until February 15, 2011, approximately 8 months later. Moreover, the record shows the NLRB voluntarily withdrew its initial charges in this case after the charges had been pending for more than four months.[5] The Company argues the foregoing is relevant to the determination of "equitable necessity," as the NLRB is arguing serious injury that cannot await a decision by the Board on the two pending charges (15-CA-19704 and No. 15-CA-19738), but the evidence shows the NLRB voluntarily withdrew its initial charges even though they had been pending for months. This Court is mindful that though traditional rules of equity may not control the proper scope of Section 10(j) relief, some measure of equitable principles come into play. Here, this Court concludes the delay between the strike itself and the filing of the federal court petition for injunctive relief undermines the NLRB's argument that immediate injunctive relief is warranted, particularly where the NLRB's voluntarily dismissed pending charges and opted to start all over again. Thus, the facts and circumstances of this case – wherein the petitioner waited approximately 8 months to petition this

---

[5] Specifically, the NLRB filed a charge (No. 15-CA-19497) on April 1, 2010, which contained allegations similar to those alleged in Charge No. 15-CA-19704, but voluntarily withdrew that charge prior to the filing of Charge 15-CA-19704 on August 1, 2010. Similarly, on June 15 and June 17, the Unions filed charges in Case Nos. 15-CA-19597 and 15-CA-19605, which contained allegations similar to those raised in Charge No. 15-CA-19738, but voluntarily withdrew those charges prior to the filing of Charge No. 15-CA-19738 on September 1, 2010.

Court for relief – as a matter of equity, does not warrant temporary injunctive relief.

Finally, this Court addresses the Union's argument – raised in its *amicus* brief – that the Union is suffering or losing membership because of the actions of the Company. In *Overstreet*, the district court awarded injunctive relief in part because there was evidence the discharge of strikers and failure to reinstate them was a direct cause of anti-Union sentiment that led to several petitioners to decertify the Union. 625 F.3d at 856. This Court notes the instant case does not involve a petition to de-certify the Union, nor is there evidence of specific instances of discrimination or retaliation on the part of the Company against active Union employees. The instant case, argument and evidence, focuses on the discrete issue of whether the parties reached legal impasse in their negotiations such that the Company was entitled to implement the terms of its final offer without violating the NLRA. Thus, this Court finds an absence of evidence or argument that an Order by this Court that the Company not violate the NLRA in the future through such activities as financial inducements not to join the union, threats of economic reprisals, discriminatory discharges, and other methods of interfering with employees' organization rights is necessary. Furthermore, for the reasons noted above, all requests for all other forms of injunctive relief, including reinstatement of strikers, an order of interim bargaining, and rescission of any implemented changes by the Company, are DENIED.

This Court is reminded that Section 10(j) is an extraordinary remedy to be used in rare cases only when the evidence shows an employer or union has committed such egregious unfair labor practices that any final order of the Board will be meaningless or so devoid of force that the remedial purposes of the Act will be frustrated and immediate temporary injunctive relief is warranted. This Court concludes the facts and circumstances of this case are not so extraordinary and rare that

immediate temporary injunctive relief is warranted.

Considering the foregoing,

IT IS ORDERED that the "Amended Petition for Temporary Injunction Pursuant to Section 10(j) of the National Labor Relations Act" is DENIED.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 18 day of May, 2011.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE